Thank you your honor. Good morning and may it please the court. My name is Matt Kinne representing Appellants Mountains Communities for Fire Safety, Los Padres Forest Watch and Earth Island Institute. I'd like to reserve three minutes of my time for rebuttal. This case concerns the 1,200 acre Cuddy Valley project and whether it can be approved with a categorical exclusion from the need to prepare an environmental assessment or EIS under NEPA and whether it complied with the aesthetic standards of the forest plan under the National Forest Management Act. Now they may very well be that this project would go forward ahead as planned but the Forest Service first has to conduct an EA and a finding of compliance with the forest plan standards to make sure there's not a better way to move forward and actually do a better job of preventing future forest fires. And that's exactly what happened with the similar Frazier project that we've all referenced in this case where in a nearby project as a result of the EA the Forest Service determined that it could best achieve its fire reduction goals by limiting tree removal to 10 inch diameter trees. And as we see in the Happner and those were... Can I ask about that I guess it's not particularly relevant to this case is the diameter trees you're not raising an argument in this case about the size of the trees. Not per se what we're saying is that except to the extent that larger trees are not envisioned by the rule allowing thinning of thinning projects to be done by categorical exclusion. And in this in this case what were the size of trees that were at issue that they 24 inches and above are some of the trees that are to be cut that the project decision said that trees through all age classes are to be cut and that includes medium to large trees which are defined as 24 inches and above. And... Can I ask about the Frazier project there were different trees that were at issue in that is that right or... It was a different geographical area about 10 miles from the current project site. So how does that affect the stands of trees? Were they different trees that were at issue in the Frazier project? They were similar types of trees it's the same similar forest environment so the this all age diameter classes but the Forest Service like it did in other past cases like it used to do did an EA and it developed an alternative based on comments by various plaintiffs where they or parties if it was not a plaintiff to limit the tree diameter to 10 inches and the Forest Service after it considered its fire reduction objectives decided yes we can achieve the fire reduction we want by only cutting 10-inch trees and that would also cut down on the landings and roads which would reduce the impacts to the environment. What now the Forest Service has asserted a categorical exclusion in this case they take it they were not asserting any kind of a categorical exclusion in the Frazier case. No and that's part of our point is that the Forest Service used to do EAs for these kinds of projects and you can see that in the Happener in the 2006 Epic case that was discussed by the Forest Service but also in our reply page 3 where they did EAs for these kinds of projects. That's what the Forest Service used to do and it shows it's another reason that shows why the Forest Service itself when it promulgated these rules considered that they had to do an EA for any timber sale that did this kind of logging. Are there other projects that you're aware of that the Forest Service has used the CE-6 but nonetheless had commercial thinning or cutting down of commercial trees large size trees? Well it's possible that they exist only this project in the case after ours are the only examples and the other examples. You're not aware of any others besides the two today? Just those two your honor. What do you have a basis and a reason to substantiate why under your view the Forest Service has changed this method of operating that is your position is they've never used CE-6 this way they've always gotten an EA. Why do you think that's changed if indeed it has? Well you know it's possible it's a change in personnel that lost track of the original purposes of this CE-6 versus the timber sale categorical exclusions. It could be the natural tendency of bureaucracies to want to do less environmental review. I'm just that they've started doing it as evidenced by these two cases. But there's nothing in the record to substantiate those two theories. There's nothing in the record one way or the other correct? Yes your honor that's correct and I would point out that doing an EA has never stopped the Forest Service from doing fire prevention method projects that you know we want those to go forward we just want them to be done in the right way. What in your process what is your main concern? You say you want it to go forward in the right way so you you're not objecting ultimately to a plan a fire prevention timber thinning I guess going forward you just you want to see it on less acreage you want to see smaller trees cut what what is the primary contention? Yes Judge Nelson we want to see smaller trees just like in the Frazier case the trees should be limited to the smaller diameter classes that the the evidence in the record actually shows that that best prevents forest fire while preserving large trees for environmental purposes because when you have large trees with spaces in between that presents a good fire preventative method versus cutting out bigger trees and leaving smaller ones they're more likely to burn. I have controversy about that but well and so I guess one of my questions is if they if they say they had limited it to 10 inch diameter trees in this case wouldn't your position still be that the an EA was necessary and they shouldn't go through the CE6 for that or do you think that that would be enough to go through the CE6 if even under your theory if they had limited it to 10 inch diameter trees? Right well the reality is this case would have never been brought because the environmental objectives would have been met and they're certainly I'm sure there's just like in any area of life and well there's many cases that aren't brought where the substance is fine so no one gets upset and no one brings a lawsuit but as far as whether as just a pure legal matter you could cut 10 inch and smaller trees under CE6 that presents a much closer case that's not presented today and I I don't have a clear answer I would say that technically it might not be able to be allowed to be done under a CE because it exceeds the five inch definition of trees that should be cut as part of thinning the sapling size trees five inches or smaller but well that sort of gets us into the meat of what we're CE6 doesn't apply because this is commercial thinning and therefore timber stand well you just can't use it for commercial thinning I mean that's your that's the nuts and bolts of your argument right yes your honor that's right what but what's interesting is the you know there is no difference in the regulation between pre commercial or commercial thinning isn't that isn't that the case well I wouldn't say that's true so that the whole issue of pre commercial versus commercial and we dig into this in our reply brief but you know the the proposed amicus at exhibit two they presented the 1990 version of the Forest Service manual which only lists pre commercial thinning as the type of objectives and that in fact was that 1990 version was the Forest Service manual in place when CE6 was promulgated so let me ask you that the Forest Service manual there's no disagreement that that's not a binding document the Forest Service is not bound by that it are they it depends what you mean by binding document if there is a prescription in there about standalone requirements that might not necessarily be binding if it hasn't been subject to notice and comment but to be used as an interpretive tool of what the Forest Service meant when it promulgated regulations regulations which are now in the CFR even though the originated in the handbook the court certainly should look to the Forest Service manual as guidance because as the Supreme Court said in in Kaiser v. Wilkie the court is to look at all the background of the agency rulemaking to understand the interpretation of the agency's own regulations well but that that's that's sort of what I'm getting at is I'm not aware of another case where agency guidance is used to inform the meaning of a regulation that's passed because it and it seems like there's some good reasons to say that because guidance it's just not closely scrutinized I mean you have four portions of the Forest Service manual that are inherently sort of inconsistent and and you know probably because they've come up in different variations over the different years and so it begs the question I can you point to any other cases where in any other context an agency guidance has been used to inform the decision of what the meaning of a CFR provision is well I think a good parallel is preambles to federal regulations and federal register notices those preambles are not binding regulations the same way that a Forest Service manual is not a binding regulation but courts look at preambles all the time to see what the agency meant when it promulgated the regulation and this is exactly the same circumstance or you know you could look at there could be so you're looking at a record for rulemaking and there's a memo from person A to person B saying hey I really think you know we're using this language because it means this and courts will look at that in interpreting what the agency meant when it promulgated the regulation. What is your what is your understanding maybe this is a question better for the government though what is your understanding of how are how is a Forest Service manual revised internally in the agency obviously it's not doesn't go through a notice and comment procedure but what's your understanding of you know if they want to change the manual what the process is who's responsible? I think it is just internally changed with probably very little consideration other than one person deciding that it would read better if it said this instead of this and then some actually are put out into for no formal notice and comment so in this case and we have the interplay between the handbook and the manual which are similar in terms of you know agency guidance but when CE 6 was promulgated it went through notice and comments and ended up in the handbook and so that's a provision so I think it just depends on well but CE 6 is now a regulation right I mean right I mean and it was always a regulation it just resided in the handbook because it went through notice a comment and oh I see but but but the pre commercial thinning the exact portion of the Forest Service handbook that was that never went through notice and comment. That's right that was always developed internally but it does show what the Forest Service was thinking when it promulgated what did become a regulation it all that rulemaking shows the agency thought process. Now Mr. Kenna your your statement about some parts of the Forest Service manual may be changed if that's of some concern to me because I thought your your reliance on the definition in the manual of timber stand improvement being for trees not past the sapling stage I thought that was pretty important to your analysis but what you're telling us now is it's no big deal if they keep on in order to change what's in the manual. What I your honor I was just saying that some parts of the There are certain parts that I can't even speak to but I know probably change without much review but the provisions we're talking about here that define timber stand improvement they stay consistent all through from the 1990 version where it was defined to only include pre commercial thinning up through the 2014 version where it was defined as nothing past the sapling stage everything all available indices of agency intent shows that the Forest Service meant for timber stand improvement to only include pre commercial thinning of small trees versus the commercial timber sale regulations where the Forest Service itself said these are for timber sales even ones that reduce fire danger. These are the timber sale regulations to be used for timber sales and they have caps on acreages so we have a consistency through the regulations for both timber stand improvement on the one hand and timber sales on the other. Talk to us I see your time is always time is running. Talk to us for a moment if you don't mind about our deference. About the court's deference? Yes whether deference should be given. Well I discussed Kaiser v. Wilkie earlier and I think that should be the guiding principle that the court should look to first because it cabins the so-called our deference that AUER from the case given to agency interpretations of their own before you get to that point where you found maybe a hole in interpretive guidance you should first look to the agency's own regulatory background everything it said and that will provide the answer in many cases before you even get to our deference. So I would say in this case very little should be given for that reason and second because there's no consistent agency interpretation to defer to. We've shown that both in the Frazier case and the Happener in 2006 epic cases that the agency used to do EA's for these kind of projects they've only recently started categorically. Why does that bind the agency I mean just because there was a CE a categorical exclusion out there that they didn't choose to rely on for whatever reason I mean I guess your argument is it's not that it was just done one or two points but historically there's a pattern in practice of the Forest Service not relying on this and that makes it more suspect. That's right your honor and that reduces or eliminates the amount of deference that should be owed to the agency position which is only been developed in this case and the case after ours. I see my time is run out. Yeah we'll let you reserve time for rebuttal. Thank you. Good morning and may it please the court. My name is Anna Katselis and I represent the Forest Service. The Cutting Valley Forest Health and Fuels Reduction Project is not a logging project. As its name signifies it is a forest health and fuels reduction project that will treat approximately 1,200 acres a modest size of overstock timber stands to reduce the risk of future wildfires which threaten the nearby community and also to reduce the risk of disease and insect infestation with threat which threaten the stands themselves. As this court is well aware years of fire suppression have created an unstable condition in Southern California as is evidenced by numerous wildfires which are explained and that doesn't seem to be an issue. I think ever it sounds like opposing counsel I mean at least the representations to us are they they're fine with the project going forward. They agree that wildlife or wildfires need to be addressed but what about this question that I think Judge Stein had asked about what's the historical use of CE6 by the Forest Service. Can you flesh that out? Is it true that these are the first two projects that have used CE6 or there are other examples where the Forest Service has used CE6 for these type of thinning projects? Sure your honor of course CE6 has been in effect for quite a long time. You know it was promulgated in 1992. The question is Judge Nelson's question is are there other projects that's my interest as well that you use CE6 and that involve commercial thinning of large diameter trees. Is there any other one that you can point us to? I'm not aware of another one that I can think of. I can provide a citation it's not in our brief but I is a case called Alliance for the Wild Rockies versus Weber 979 F sub 2nd 1118. It was affirmed at 639 F point appendix 498 and that was a the application of categorical exclusion six to a project significantly larger. It did involve pre-commercial thinning but the project size was three thousand six hundred and six. But you just it seems to me you just distinguished it from this by saying it involved pre-commercial thinning. Well your honor I that was the answer that was the best answer that I have that's the one I'm aware of for that case but you know this court has not. Let me ask the question a slightly different way. Has the to your knowledge has the Forest Service approved projects of this basically the same scope as a Cuddy Valley project that is thinning on 1,200 acres and commercial thinning on a 600 of those acres using this CE 6 exclusion to your knowledge? To my knowledge I'm not aware of it your honor but that doesn't mean that it hasn't happened. No no I understand. No it hasn't. Can you is there a reason that you can conjure up again I don't think there's anything in the record but that's the absence of a reason being in the record is is my concern. Is there anything that you can point to as a reason why it was never done before? Oh your honor again I'm not sure if that's true so I would be speculating if I came up with a reason that this hasn't been done before so I don't want to speculate on something I'm not sure is accurate in the first instance. Fair enough. But I would like to I would like to point out that this court's case law on the application of categorical exclusions is quite clear that you know whether an action falls within the scope of one is a quote factual determination that implicates substantial agency expertise and is reviewed under the arbitrary and capricious standard. But would it would it be our I mean I get it seems to me that the first course of action here is determine what the regulation says and whether it's ambiguous or not. Is it is it the government's position that the regulation is unambiguous and permits this to go forward? Yes your honor and if you would permit me to walk through this this is unambiguous it's clear to understand improvement is illustrated in the regulation by by four non-exhaustive examples and when when you look at how this court has decided categorical exclusion cases it has for example we cite California v. Norton that that case actually found that the ruled against the government there but it was because the agency hadn't even invoked the categorical exclusion or documented its decision that it applied but the case if you read it it stands for the simple proposition that an agency must document its decision to apply a categorical exclusion and in essence your honor this court has been quite deferential to determinations like this one which implicate the agency's expertise and this and this your honor is a more straightforward case than a number of this court's categorical exclusion decisions and what we would we submit is it's very the language is unambiguous and when you look at the record and and we would we urge the court to read the decision memo for the Cutting Valley project where it is it is also unambiguous that this is a timber stand improvement project plaintiffs have mischaracterized it as a logging project repeatedly but that does not make it so but let me back up because I mean one of the concerns I have is that if we were to adopt the government's argument here wouldn't it effectively allow ce6 maybe maybe plaintiffs are overstating the case as to this project but if we were to allow your interpretation of ce6 it seems like it would allow the Forest Service to do that in a future project because I mean you basically did what would the limitations be at that point I mean it would it would clearly allow I guess your point would be it would only be pre commercial thinning is very well I don't know help me understand sure your honor well first of all there are there are several limitations on the Forest Service's use of categorical exclusion six and they're in categorical exclusion six itself so you know plain activities that do not include the use of herbicides there's one limitation or do not require more than one mile of low standard road construction so there's only so much that can be done with without the construction of roads we'd like to help me understand that because I understand the government said that but but you're saying if we go up to 3,500 acres apparently given the given the other project that was the Weber case that was addressed in Weber so I mean other categorical exclusions only have acres limitations of 250 I think was it 450 perhaps in one but how does that mile road it doesn't seem like that's a substantial limitation well respectfully your honor I disagree and again this is a matter this is really sort of a matter within the Forest Service's expertise because you know this is and we'd like I mean I think the the Frazier product project is illustrative here because plaintiffs cite that repeatedly but we've cited supplemental excerpts of record 27 that project involved roads I believe it was 2.4 miles of you know temporary road construction so it may not have even fallen within ce6 but so there's there's those are two but you're saying this this project involves less than one mile of road and it always involves no road but that's because of how this is set up I take it because it would seem without roads it would be hard to thin 1200 acres but maybe there's pre-existing roads is that the idea no your honor I don't know that I'm I'm not sure of the answer to that question but I do think it it is it is a limitation on what can be accomplished and again the decision so that just limits their access to the area I mean everything's what does that mean they're not going in by road everybody's walking this 1200 acres and doing the thinning without well the methods the methods are set are set out there is some mechanical thinning but there is also hand thinning that will be done here but this is this is I mean again it helps to illustrate why this is not a logging project that this is diffuse thinning you know the treatment areas are strategically placed throughout this area and you know the goal is to achieve a certain basal area a certain amount of trees per acre the goal is 80 this is all in the decision memo so this is just by its nature it's a very different animal than a than a logging project that is intended to produce revenue it's a very it's a different it's just a very different thing well let's talk about that for a moment I didn't mean to cut you off go ahead well I just wanted to mention also that there's a you know there is another limitation on the Forest Service's use of ce6 which is that the Forest Service has to consider whether there are extraordinary circumstances and that's that fourth in the regulation that they have to consider these resource conditions so your honor I mean respectfully I think if you have something that is you know extremely large it may be the case that there may be you know that may raise a question about impacts on listed species for example but that's another and so the agency has to consider that in every in every instance so there are let's talk about let's talk about that for just a moment because what are the implications for our decision here and for the position of the Forest Service on the extent of commercial thinning if this project can use ce6 to not have an EA or EIS that's an implicit is phrasing let me try it again what are the limits here to what you're asking us to do given the fact that you've used the Forest Service has used a ce6 in an in a project which involves thinning of large diameter trees I'm not sure I understand the question I mean the limits are the ones that I've previously stated there is not an acreage limitation that is not how this CE was promulgated the fact that the the Forest Service did that for other CEs has no bearing on the scope of this one and it's important that in ethic plaintiffs urge the court to sort of go down this road of you know looking at how other CEs may may fit or apply and what they would say and the court recognized that that was sort of an extreme position and it declined to go there so the limitations are the ones that I've stated there can be no herbicides there can be only up to one mile of low standard roads and the agency must assess whether these there are extraordinary circumstances and it must look at these these resource conditions so those are the limitations on on this CE and your honors I would you know respectfully point out here that you know this is not the this is a simple a simple straightforward relatively modest project I mean you know your honors this court is well aware that forest that you know harvest projects can be much larger than this ones that are designed to reduce revenue and etc and this is quite modest in size you may you may be right in regard to this particular one but we have as an appellate court we have to be conscious of the implications of what we're doing so I apologize for for my not being clear but in this project you've got 600 acres of commercial thinning you use CE6 and that that permits and not having an EA or an EA or an EIS assuming we permit that that is the use of CE6 here with 600 acres of commercial thinning what are the boundaries of that in other words the next project which has 700 acres is that okay 800 acres do we look at the percentage of pre-commercial thinning versus thinning what's the outer limit of what you're asking us to do here your honor I am sorry to have to repeat myself but the limits are the ones that I've stated and I do want to make the point that you know this project states that the Forest Service will use commercial means to the extent that is the most cost-effective and efficient means it you know that is consistent with its the instruction in its manual but that that the fact that it may sell some of the product doesn't necessarily isn't necessarily relevant to whether this may have significant effects it is you know that you know that it is the methods that are used it is it is what is written in the regulation itself so those are the CE14 for example has a limitation right 250 acres something like that this has no limitation CE6 so you're asking for from authority to avoid the process as Judge Nelson said this really is it seems to me a process issue to avoid the process of seeking an EIS immediately. Well the authority the authority respectfully your honor is CE6 so you know this is CEQ regulations expressly provide for agencies to promulgate these categories of exclusions and to and to provide for extraordinary circumstances in which they may not be sufficient and where the agency may need to do an EA and the project as we've explained in our in our in our brief if I put your honors I would like to talk about the question if I can if we can go to the text of CE6 it gives examples a non-exhaustive list of examples of what type of activities are permitted and one of them is thinning but it also includes a gurgling trees to create snags prescribed burning to control understory hardwoods. As someone who grew up in the city I have no idea what gurgling trees or understory hardwoods are but can you tell me with respect to these other examples other than thinning are they limited just to trees at the sapling stage or could these activities be applied beyond the sapling stage? Well your honor I mean there are no the death that they're not definitions of these terms in the regulations and if you look at the history of this regulations which I hope I can talk about briefly but they really were the intent here was to give commit this to the expertise of the of the people on the ground and the experts on the ground but snags your honor for example they they generally are not small trees they are larger trees so you know I'm just reflecting my my saplings and if I could ask a broader question I mean just and maybe this is part of your answer to judge Lee's question what do we make of the Forest Service manual because it does seem number one that there's some internal inconsistencies between it and number two some arguable inconsistencies between the Forest Service manual and what's allowed in CE 6 what do we do with that as a court? Well first of all I'm I would very much thank you for the opportunity to address that question there are multiple problems with the plaintiff's argument that this is limited to saplings based on the 2014 Forest Service manual one the manual is not binding in this court has recognized in several cases that that's not the case number two they've argued that the agency has incorporated this into the forest plan it has not it needs an express statement you know number three you know there they rely on these statements in which the agency has they claim the agency has indicated an intent to be bound it has not fourth and perhaps most significantly your honor this is consistent with the Forest Service manual plaintiffs are relying on a single statement but you have to look at the manual as a whole and even this you know we have made the point it's not that the NEPA it's there's a separate chapter that's NEPA that this is not in but you know when you look at even the silvicultural chapter as a whole you can't look at just one provision this isn't consistent section 2470 defines thinning as an intermediate treatment made to reduce scan density other provisions set forth broad objectives understand improvement that could not reasonably be accomplished without felling large trees you know section 2476.03 directs the Forest Service to accomplish stand improvement objectives to the extent possible by commercial sales your honor and saplings are not saleable and finally improvement cut is defined as an intermediate treatment made in a stand full-sized or larger this does not reflect any intent limit this to saplings and if I could please make one more point on that plaintiffs talk a lot about the regulatory history and the promulgation of this and I would like to briefly make the point that if you look both in the proposed rule 56 Federal Register 19-719, 19-746 and in the final rule which is 57 Federal Register 43-180 the court will see that numerous instances in numerous instances getting some feedback excuse me but the Forest Service reference by the Forest Service handbook and the Forest Service manual specifically with respect to a number of provisions so it knew how to it did not do so in category for categorical exclusion six it never did so so timber stand improvement you know the agency could have referenced its manual to include its definition and show that it wanted to include that specific definition it never did so so I think that's a very important point you know so this is you know this regulation is I mean it was incorporated you know so plaintiffs had an opportunity to comment on that this was put into the CFR in 2008 there's another opportunity to comment this this importantly is not a challenge to CE 6 CE 6 is valid and you know that's that is probably time barred it is only whether the Cutting Valley project falls within that so I we do think it is important are the amicus brief before the court also talks about this history and how this there are there were references to the Forest Service manual for other categorical exclusions but the question is the Forest Service's intent and if I could also briefly address Kaiser because I would like to be responsive to judge fines question and deference here briefly number one this is unambiguous and we don't think there is a need for deference but you know Kaiser the question is only whether is this entitled to controlling to our or control or deference under which the Forest Service definition is controlling or is it only or is the Forest Service only entitled to deference to the extent its interpretation is persuasive we say that that does not matter because this is certain you know you don't have to decide that question because this is certainly persuasive it doesn't it does it doesn't change the outcome of this case whether the deference afforded is controlling weight versus to the extent that it is persuasive but also there are three if this court determines that this is ambiguous there are three requirements for Kaiser deference to apply and they are met here the decision memo for the first the decision memo for the Cuddy Valley project is an authoritative interpretation Kaiser itself 139 Supreme Court at 2416 recognizes that not every official interpretation emanates from an agency head and recounts that the Supreme Court itself has deferred to official memoranda to this interpretation unquestionably implicates the Forest Service's substantive expertise this is this is clear and important and the importance of expertise is well reflected in this court's case law and third the interpretation reflects the Forest Service fair and considered judgment this is not a litigation position it's in that it's in the decision memo it's in the decision from approximately eight years ago we've we've cited to this court and it's also not a new interpretation that has unfairly surprised any that any regulated parties plaintiffs have cited and counsel I think we have your argument I unless there's other we're just got to pay attention to time today unless there's other arguments or excuse me questions from the panel we'll go insight on this mr. Kinane is it so counsel referred to the purpose of the project versus the impact of the project and if you look at last year's bark decision from this court it it deals with that and says for determining whether what level of NEPA analysis to employ it doesn't matter whether the purpose is to reduce fire danger or the purposes is to produce lumber the question is what the impact is and a lot a logging project is going to have the same impact regardless of its purpose well the point that we've made maybe just a moment ago you have to challenge CE6 so you have to challenge whether this applies to it we're not challenging CE6 because during the time you know a bare facial challenge is present the Forest Service never applied it to anything close to this kind of project well but they could have it's limited by one mile everyone was on notice in 1992 if there was an argument that that was not going to satisfy the cataclysm requirement could have been challenged well as your courts aware of ripeness is always a problem when challenging a regulation and if there had been a facial challenge at that time the courts would have said no this challenge isn't right because all they're doing is applying it to pre challenge application of this to a commercial thinning project you have to wait until the Forest Service applies it to a commercial thinning project and I will say there's sort of different levels of facial challenges it may be very possible to raise an I know this sounds odd but an as applied facial challenge I think there's a lot you could under the extraordinary and I'm not for extraordinary circumstances is if the project fits the category in the first place then you look to extraordinary circumstances and here what we said was there are extraordinary circumstances present and that's namely weather cutting issue of weather cutting large trees helps prevent future forest fire is very controversial and that the court this court found that to be the case in last year's art decision so we were saying is that the second reason for why a categorical exclusion didn't apply here but the first reason is that it didn't even fit the category in the first place because the other not just the timber sale categorical exclusions but also CE10 which was specifically targeted towards preventing future forest fire and was limited to a thousand acre projects it was set aside by this court in a facial challenge so the Forest Service has been avoiding what would be the logical and proper categorical exclusions if this project were small enough by going out and picking now this one for the first time logging projects fitting projects I see I'm over time getting tones unless the court has any other questions if there's no other questions we'll go ahead and admit this case and thank you both for your arguments thank you your honor
judges: Stein, Nelson, Lee